Randy Lee UNDERWOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 55368.

Court of Criminal Appeals of Texas, Panel No. 2.

Sept. 20, 1978.

Thomas A. Autry, Austin, for appellant.

Ronald D. Earle, Dist. Atty., and Bill White, Asst. Dist. Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for possession of more than four ounces of marihuana, wherein the punishment was assessed by the court at two (2) years, probated.

The alleged offense occurred on February 10, 1974. The indictment was returned on July 30, 1974, and the appellant was tried before the court on a plea of not guilty on April 23, 1975. Following conviction and notice of appeal, the appellate record reached the Court of Criminal Appeals on June 30, 1977, more than two years after trial.

On July 6, 1977, a week after the appellate record was received, the appeal was dismissed for want of a proper judgment in accordance with Article 42.01, V.A.C.C.P. See Savant v. State, 535 S.W.2d 190 (Tex. Cr.App.1976); Mendez v. State, 535 S.W.2d 365 (Tex.Cr.App.1976).

On October 6, 1977 the trial court again had the appellant before the bench and again assessed punishment, both the court and counsel being under erroneous impressions as to why the appeal was dismissed. The supplemental record was received in this court on June 1, 1978, along with a proper judgment and briefs which had not originally been filed.

On appeal appellant challenges the validity of the search, contending the search warrant affidavit did not meet the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We need not reach this contention as we agree with appellant's second claim that the evidence is insufficient to sustain the conviction of this appellant.

The record reflects that Austin police officers executed a search warrant at 3219 Nancy Gale in Travis County on February 10, 1974, which was based on an affidavit which stated, among other things, that Terry Ayers and Diana Ingram were keeping, using and selling marihuana at said address. Upon entering the house, the officers found the appellant Underwood and Susan Ray in the living room. Ayers was behind a bathroom door with a gun, which he surrendered, and Diana Ingram was found hiding in a closet in which two baggies of marihuana were discovered. Two marihuana cigarettes were found in the bedroom.

Sgt. James Belvin testified that additional marihuana was found in a gray can on the side table in the dining room, in a red fruit cake can on the floor beside a chest in the living room, and that marihuana seeds were found in a Mason jar on top of the chest and in a coffee can in the chest. The house had a combination living room-dining room [1] which was described as a "big area." Although Belvin first described the chest as being in the living room, his later testimony placed it in the dining room. Sgt. A. P. Lamme of the Austin police department described the amount of marihuana found as being seventeen to twenty-one ounces with thirteen ounces being seeds.[2] $1,300.00 in cash was also found.

The officers stated that no check was made to see who had leased or rented the house. The utilities were in the name of one Terry Newmar, which Lamme thought was a fictitious name. Some mail or personal papers were seized, but Lamme stated they "were all to their post office box they had been using out in Manchaca, as I recall." Lamme did not describe whom he meant by "they" and the names on papers were not revealed nor were the papers introduced into evidence. Lamme stated that their surveillance showed that Susan Ray had arrived with a suitcase just two hours before the execution of the search warrant, and she apparently was not prosecuted. The officers did not testify what their on and off surveillance showed, if anything, as to this appellant. There was no showing that in the search of the appellant, which was conducted at the scene, either contraband or cash was found on his person.

The appellant called Dan Tanner, who testified that the appellant was his roommate and lived with him at a different address at the time. No rebuttal evidence was offered.

---

1. It appears the dining room was offset somewhat from the living room.

2. The stipulation as to the chemist report shows 11.241 ounces of marihuana and 10.13 ounces of marihuana seeds.

An accused may with another or others jointly possess dangerous drugs or narcotics. Thus possession of such items need not be exclusive and evidence that the accused jointly possessed narcotics with others is sufficient to sustain a conviction. *Martinez v. State*, 539 S.W.2d 885 (Tex.Cr. App.1976); *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App.1976); *Curtis v. State*, 519 S.W.2d 883 (Tex.Cr.App.1975), and cases there cited. It must be remembered, however, that mere presence alone at a place where narcotics or dangerous drugs are being used or possessed by others does not justify a finding of joint possession. *Brooks v. State*, 529 S.W.2d 535 (Tex.Cr. App.1975); *Woods v. State*, supra; *Curtis v. State*, supra; *Hernandez v. State*, 517 S.W.2d 782 (Tex.Cr.App.1975), and cases there cited.

In *Curtis v. State*, supra, this court wrote:

"The State must show that (a) the appellant exercised, either singularly or jointly, care, custody, control and management over the contraband and (b) that he knew the object he possessed was contraband. The evidence must affirmatively link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and whereabouts. *Hineline v. State*, Tex.Cr.App., 502 S.W.2d 705; *Powell v. State*, Tex.Cr.App., 502 S.W.2d 705; *Williams v. State*, Tex.Cr.App., 498 S.W.2d 340. This affirmative link is established by showing facts and circumstances which indicate the accused's knowledge and control of the contraband. *Williams v. State*, supra; *Powell v. State*, supra; *Alba v. State*, Tex.Cr.App., 492 S.W.2d 555."

It has further been held that where an accused is not in exclusive possession of the premises it cannot be concluded that he had knowledge of the contraband and control over it unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Woods v. State*, supra, at p. 18, and cases there cited.

With this background, we return to the facts of this case. Officers, armed with a search warrant, conducted a search at the address in question pursuant to a search warrant. The warrant was based on an affidavit which states Ayers and Ingram were keeping, using and possessing marihuana. The appellant was found in the living room of the house at the time of the search. There was no showing that he had leased or rented the house, had the utilities in his name, or shared joint possession of the house. None of his personal clothing or possessions were shown to be in the house. No cash or contraband was shown to have been found on his person. The personal papers and mail which were seized bearing a different address were not shown to reflect his name. There was no evidence of furtive gestures toward the contraband when the officers entered the premises, no attempt to escape, and no evidence of any marihuana smoke, no evidence of the appellant being under the influence of marihuana or other drugs, and no incriminating statements at the time of arrest. The record does not establish appellant's position in the living room-dining room so as to show close proximity or plain view. Further, the mere presence of an accused near where the prohibited items are found, standing alone, is not sufficient to show possession. *Hernandez v. State*, supra, and cases there cited.

In *Burks v. United States*, —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1, the United States Supreme Court by opinion on June 14, 1978, held that the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient . . . ." In *Greene v. Massey*, —— U.S. ——, 98 S.Ct. 2151, 57 L.Ed.2d 15, handed down the same day as the *Burks* decision, the Supreme Court held, "Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland*, supra [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)], we are bound to apply the standard announced in *Burks* to the case now under review."

Having found that reversal must result in the instant case since we concluded that the

evidence is insufficient to support the conviction, the Supreme Court's decisions in *Burks v. United States*, supra, and *Greene v. Massey*, supra, dictate that no further prosecution be had in this cause.

The judgment of conviction is set aside and is reformed to show an acquittal.

For the reasons stated, the judgment is reversed and the cause is remanded.