**Llan Howard SEWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56437.**

Court of Criminal Appeals of Texas, Panel No. 3.

March 14, 1979.

**132**

Anthony C. Aguilar, El Paso, for appellant.

E. W. Boedeker, Dist. Atty., Levelland, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

Upon a conviction of possession of more than four ounces of marihuana and a subsequent assessment of punishment at ten years, probated, appellant brings this appeal. Four grounds of error are presented for review. We conclude that the first ground of error, which challenges the sufficiency of the evidence to sustain the conviction, is dispositive of the case.

Analysis of the sufficiency issue requires a detailed review of the facts, including activities of multiple defendants and law enforcement agents over a period of several days in at least six towns and two states. The case presented by the State is circumstantial, and it revolves primarily around appellant's association with persons at critical times and places.

The State's first witness was William Garcia, a narcotics officer with the New Mexico State Police. Garcia testified that based on information received from an informant he set up a surveillance of Otley Smith in El Paso, Texas beginning on May 24, 1976. Smith was suspected of dealing in marihuana. On May 25, 1976, Smith drove a black Trans Am automobile to the airport in El Paso and picked up appellant there. Over the next two days Garcia observed Smith and appellant in the Trans Am at various locations in El Paso. At one point the car was taken to a shop which installed two powerful accessory lights on the front bumper.

Garcia stated that Smith and appellant left El Paso on the afternoon of May 27, 1976, traveling toward Carlsbad, New Mexico in the Trans Am. At a point about sixty miles east of El Paso, the Trans Am stopped next to a "pink colored" Lincoln automobile and a white Oldsmobile hitched to a trailer. Garcia observed Smith and appellant talking to a man identified as Noah Castle. Smith and appellant got back into the Trans Am and drove to Carlsbad, New Mexico. The Oldsmobile followed the Trans Am, but Garcia did not see it actually enter

the town. The Trans Am next stopped at a discount store in Carlsbad. After a brief stay at the store, Smith and appellant got back in the car and drove to Lovington, New Mexico. After stopping for food and fuel, the Trans Am headed north toward Tatum, New Mexico. Garcia stated that he identified both Smith and appellant as the occupants of the car at that time. The car arrived in Tatum at around 10:30 p. m., and without stopping it headed east toward the town of Bronco, Texas. Upon arriving at Bronco, the Trans Am headed south for a short distance, and then it came back to Bronco. It then headed east for a short distance, and again returned to Bronco. Garcia did not follow the car during those short trips, but did begin to follow it again as it headed north. Garcia stated that he observed two people in the car at that time, though he did not identify them. The Trans Am drove north for about eight miles and pulled off on a side road. Garcia and his partner stopped their car north of the Trans Am. He estimated that they remained there for about an hour in the darkness, during which time they lost radio contact with the other agents and saw only "[r]eflections of light" on the highway.

Garcia testified that he and his partner heard what sounded like gun shots. They headed south toward some reflecting lights, and after traveling for about ten minutes they discovered that other officers had arrested Noah Castle and his wife at that spot. The white Oldsmobile was also at the scene partially loaded with bags of marihuana. Garcia and his partner waited in the area about an hour, then headed south where they observed that another officer had arrested Smith in the Trans Am.

On cross-examination Garcia stated that he never saw the Lincoln automobile after the sighting east of El Paso. He testified that when he saw appellant in Carlsbad he was wearing "blue jeans and a light colored shirt." Garcia stated that he had constant sight of the Trans Am from Lovington, New Mexico until it arrived in Bronco, Texas. However, he admitted losing sight of the car for ten minutes when it headed south from Bronco, during which time he

did not know the activities of the car or its passengers. When the car returned to Bronco it had two persons in it, but Garcia could not identify them. He testified that appellant was not at the scene where the arrests took place and the marihuana was discovered. He admitted that the last time he could positively identify appellant in the Trans Am was in Tatum, New Mexico around an hour and forty-five minutes prior to the arrests and discovery of the marihuana. He further admitted that the last time he saw two people in the Trans Am was as it left Bronco about an hour and a half before the arrest occurred. Further, Garcia stated that he searched the Trans Am and found no marihuana in it.

The next State witness was Alvin Miller, a narcotics officer with the New Mexico State Police. He also participated in the surveillance of Smith in El Paso and saw him pick up appellant at the airport on May 25, 1976. Miller observed the black Trans Am with Smith and appellant as occupants leave El Paso and travel to Carlsbad. He verified that the car stopped east of El Paso next to the Lincoln and Oldsmobile automobiles. When they arrived at Carlsbad, Miller split the agents into two teams; one followed the Trans Am, and one followed the Oldsmobile. Miller kept the Trans Am under observation from Lovington, New Mexico to Tatum, New Mexico, and he lost visual sight only temporarily several times along the way. Miller identified Smith and appellant as having been in the car at Lovington, but could only say that two people were still in it at Tatum, New Mexico. The Trans Am was then followed to Bronco, Texas. Two persons were still in the Trans Am which stopped on a side road north of Bronco. Surveillance units parked north and south of the Trans Am and waited. Miller said that he heard an airplane which was flying south of their location. It was flying with no lights on, and it was in the area for "around 15 or 20 minutes."

Shortly after he stopped hearing the aircraft, Miller heard gun shots to the south. He and his partner headed south and found that the Oldsmobile and trailer, which con-

tained "a large amount of sacks," had been seized and Noah Castle had been arrested. He also observed that the Trans Am was stopped and Smith was arrested. An officer turned over to Miller a "plastic container" which included an "identification of" appellant.

On cross-examination Miller stated that no one followed the Lincoln automobile, and he had no idea where it went. He stated that the last time he could positively identify appellant was in Lovington, New Mexico, but he did observe two people in the car after that. He admitted that he lost sight of the Trans Am when it turned south temporarily at Bronco, but that the car was out of view for only a short time. He estimated that he was parked for only about "15 or 20 minutes" north of Bronco before he heard the gun shots to the south. He also verified that appellant was not at the scene of the arrests, that the Trans Am was around a mile to a mile and a half from the Oldsmobile when Smith was arrested, and that no contraband was found in the Trans Am. He stated that appellant was wearing blue jeans and a light colored shirt.

The next State witness was Glen Alexander, an agent for the New Mexico State Police. He first observed Smith in the discount store in Carlsbad. He was not able to identify appellant, but saw Smith get into the Trans Am with another person. Alexander followed the car out of town to Lovington. He was unable to identify appellant there either, but again observed two people in the Trans Am. He followed the car to the point at which it stopped north of Bronco, Texas, and parked on a side road. Alexander stood on top of his car and observed the Trans Am about a mile north of him by looking through binoculars. Shortly thereafter he heard an airplane, and he observed it fly over them at "about a hundred feet." It had no lights on. Alexander looked back at the Trans Am parked on the road, and he saw the car lights flash on. He described the lights as "very bright." The airplane circled back around and "floated in" close to the Trans Am. Alexander did not actually see the plane land, but he got back into his car and headed toward the

Trans Am. When he approached the area, Alexander saw a trailer with the back doors open. He also said that he observed two people, Noah and Betty Castle, whom he pursued and arrested. The Trans Am was about a mile north on the highway making a "u-turn." The car sped by and headed three or four miles south where it was stopped by another officer. Smith was arrested in the Trans Am.

On cross-examination Alexander stated that he never saw appellant, and he could not identify him as having been involved. He then admitted that the bright light he saw before the airplane circled around could have come from the Oldsmobile rather than the Trans Am.

The next State witness was Vance Adams, also a narcotics agent for the New Mexico State Police. He testified that he was Agent Alexander's partner in a surveillance beginning in Carlsbad, New Mexico. He observed two people in the Trans Am, but did not identify either of them. He verified Alexander's testimony as to the events leading up to the arrests. He observed Noah and Betty Castle arrested by the trailer, and he saw Smith arrested in the Trans Am. He estimated that the large bags in the area weighed around 900 pounds. Adams testified that when he first observed the trailer there were three people standing by it, but he could not identify them. The three ran toward a fence on the side of the road. Agent Alexander fired three warning shots and then pursued them. Adams said all three people he observed were about the same size as Smith and all three wore light colored shirts.

On cross-examination Adams admitted that he never saw appellant during the course of the surveillance. He further said that he had no idea where the third person he saw by the trailer came from or went to after the arrests took place.

The State next called Jesse Franco, another narcotics agent for the New Mexico State Police. He participated in the surveillance in El Paso, and he also followed the Trans Am to Carlsbad. He observed

Smith and appellant stop and talk to three people by a Lincoln and an Oldsmobile. He identified two of them as Noah Castle and his wife. He followed the Oldsmobile to Hobbs, New Mexico, and then to Bledsoe, Texas. He saw the car and trailer again when it was taken into custody by other agents. He did not see appellant at any time after the discussion next to the Lincoln and Oldsmobile.

The next witness for the State was Ken Thompson, a New Mexico State Policeman. He was working in the Tatum area on May 27, 1976, when he was solicited by other agents to join a surveillance. He traveled to a spot north of Bronco, Texas where he parked on a side road. He was radioed that the Trans Am was coming his direction. He stopped the car and arrested Smith, who was the only passenger. While chasing the Trans Am, Thompson observed several pieces of paper thrown out the driver's window. He recovered those papers, and they included appellant's driver's license and University of Texas at El Paso student identification card. Also among the various cards and pictures found was a business card with the name "Noah" on it and a phone number.

The State next called Fred Jack, a narcotics agent for the Texas Department of Public Safety. His testimony showed chain of custody of the automobiles and bags found north of Bronco, Texas. He stated that the Trans Am was registered to Jeannie Merrill. The final witness for the State was a chemist that identified the substance in the bags as marihuana. Appellant did not present any evidence.

■ The general rule for reviewing the sufficiency of evidence is that it will be viewed in the light most favorable to the jury verdict. *Bowers v. State*, 570 S.W.2d 929, 932 (Tex.Cr.App.1978). However, this Court has applied a different test when the verdict is based on circumstantial evidence; the evidence is insufficient if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. *Stogsdill v. State*, 552 S.W.2d 481 (Tex.Cr.App.1977). As was stated in

*Culmore v. State*, 447 S.W.2d 915 (Tex.Cr.App.1969):

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged."

■ The State's evidence in a possession of controlled substances case must establish that the accused (1) knew the substance possessed was a controlled substance, and (2) exercised care, control and management over the contraband. *Herrera v. State*, 561 S.W.2d 175 (Tex.Cr.App.1978); *Harrison v. State*, 555 S.W.2d 736 (Tex.Cr.App.1977). We have held that both of these elements may be proved circumstantially:

"[C]ontrol may be shown by actual or constructive possession; and knowledge, being subjective, must always be inferred to some extent, in the absence of an admission by the accused. An affirmative link to the person accused with the possession of narcotics may be established by showing independent facts and circumstances which indicate the accused's knowledge and control of the narcotics." *Rodriguez v. State*, 496 S.W.2d 46 (Tex.Cr.App.1973).

The defendant's possession need not be exclusive, and evidence showing joint possession with another is sufficient. *Harrison v. State*, supra; *Rice v. State*, 548 S.W.2d 725 (Tex.Cr.App.1977). The question presented, therefore, is whether the independent facts and circumstances shown by the testimony summarized above excludes every other reasonable hypothesis other than that appellant knew and exercised control over the marihuana found north of Bronco, Texas.

■ This Court has carefully reviewed the "affirmative link" in numerous cases. We have held that even when the defendant is present at the scene, there must be

additional facts to show knowledge and control. *Underwood v. State*, 571 S.W.2d 7 (Tex.Cr.App.1978); *Harrison v. State*, supra. For example, in *Hausman v. State*, 480 S.W.2d 721 (Tex.Cr.App.1972) we concluded that even though officers had observed persons smoking around a campfire and appellant was found sleeping by the fire with a bag of marihuana one foot from his head, the evidence was insufficient to show exercise of control over the substance. In the recent case of *Nieves v. State* (No. 57,011, delivered January 3, 1979), we concluded that the evidence was insufficient to find knowledge of the contraband when the defendant was sitting in the cab of a truck containing over 600 pounds of marihuana.

■ Since appellant was not identified at the scene where the marihuana was found, we must look with even closer scrutiny at the independent facts from which we are to infer that he knew of and exercised control over the substance. The evidence presented by the State shows that appellant was seen in the company of Otley Smith in El Paso and that he traveled at least as far as Lovington, New Mexico in the Trans Am driven by Smith. The positive identification of appellant was made at Lovington. However, since the car was followed from Lovington to Bronco, Texas without stopping, and two people were observed as passengers in the car, we may reasonably conclude that appellant traveled as far as Bronco. However, the car was lost temporarily south of Bronco, and the passengers in the Trans Am were not viewed during the time the car was parked on the side road north of Bronco. The officers' testimony as to the time the car was parked in that location varied from twenty minutes to one and a half hours. One agent saw three people at the scene of the trailer, and only two were arrested. However, the agent could not identify that third person. The State's case requires a finding that: (1) the evidence circumstantially proves that appellant was in the area where the marihuana was found, and (2) that his presence in the area combined with his association with

Smith is sufficient to show knowledge and control over the contraband. We conclude that the evidence does not justify such a finding.

This case differs from *Powell v. State*, 502 S.W.2d 705 (Tex.Cr.App.1973), which also involved possession of marihuana unloaded from an airplane. However, in *Powell* three people were observed loading marihuana into a pickup truck, the defendant was found in the pickup, a small quantity of marihuana was found on the defendant, and testimony showed that the defendant appeared to be under the influence of narcotics. The facts established directly that the defendant was at the scene and that he exercised control over the marihuana by loading it in the truck.

The State also contends that the driver's license and business cards found on the road help prove appellant's guilt. That evidence only indicates that appellant was in the Trans Am at one time and that he knew "Noah," who was possibly the same Noah Castle who was arrested at the trailer. Those facts are undisputed, but fall far short of bolstering the State's case. See *Reid v. State*, 474 S.W.2d 702 (Tex.Cr.App. 1972), in which the defendant's driver's license was found in a box of marihuana, but we held the evidence of the affirmative link to be insufficient.

■ The question remains whether the evidence was sufficient to show that appellant was a party to the possession of marihuana.[1] Under the prior penal code the State had to prove that a defendant was actually present at the time of commission of the offense or, if not present, actually engaged in furtherance of a common purpose and design in some other place. *Cain v. State*, 551 S.W.2d 728 (Tex.Cr.App.1977); *Robinson v. State*, 493 S.W.2d 780 (Tex.Cr. App.1973). While under that code an "accomplice" could not be convicted as a "principal," the new Penal Code has abolished such distinctions. *Cain v. State*, supra; V.T.C.A. Penal Code, Sec. 7.01(c). The State must prove that the defendant acted with intent to promote or assist in the commission of the offense by soliciting, encour-

---

1. See V.T.C.A. Penal Code, Sec. 7.01, 7.02.

aging, directing, aiding, or attempting to aid the other person in its commission. V.T.C.A. Penal Code, Sec. 7.02(a)(2). This can be done by circumstantial evidence. *Ex Parte Prior*, 540 S.W.2d 723 (Tex.Cr.App. 1976). Further, the evidence is viewed in regards to events before, during and after commission of the offense. *Wygel v. State*, 555 S.W.2d 465 (Tex.Cr.App.1977); *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App. 1975).

The only evidence in this case involving appellant was as to events before the offense occurred. The evidence shows that appellant was a passenger in the Trans Am driven by Smith for a prolonged period of time before the commission of the alleged offense. There is no evidence, however, of any aiding in the carrying out of the offense in any way other than riding in the car. We do not believe that the new party statute was intended to extend criminal liability to that extent. Absent other facts and circumstances showing that appellant encouraged or aided the criminal conduct, we hold the evidence to be insufficient.

For these reasons the judgment is reversed and the cause remanded with instructions to the trial court to enter a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).