Alberto Perales ALVAREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 61542.

Court of Criminal Appeals of Texas, Panel No. 2.

July 21, 1982.

On Rehearing Nov. 17, 1982.

On Rehearing March 23, 1983.

Rehearing Denied May 18, 1983.

---

Rosendo Rodriguez, Jr., Wichita Falls, for appellant.

Joseph Thigpen, Dist. Atty., Haskell, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ONION, P.J., and W.C. DAVIS and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

Alberto Perales Alvarez, Appellant, appeals his conviction by a jury for committing the offense of rape of a female who was "physically unable to resist." The same jury assessed appellant's punishment at confinement in the penitentiary for three (3) years.

Appellant challenges the sufficiency of the evidence. We agree with the appellant that the evidence presented is insufficient and will order the conviction reversed.

The facts in this circumstantial evidence case reveal that the 19 year old victim, whom we will hereinafter refer to only as Linda, died while in a diabetic coma. From the evidence adduced, we are also able to infer that apparently no one, including Linda herself, was aware that she was suffering from acute sugar diabetes. Other than suffering from acute sugar diabetes, Linda otherwise had the appearance of one who was in good physical condition.

The State chose to prosecute appellant pursuant to V.T.C.A. Penal Code, Sec. 21.02(a), (b)(3), which provides that a person commits the offense of rape if he has sexual intercourse with a female not his wife without the female's consent *and* the intercourse occurs when the female was physically unable to resist.

It is axiomatic that the State is bound by the allegations stated in the charging instrument, and the State must prove those allegations beyond a reasonable doubt. *Moore v. State,* 531 S.W.2d 140, 142 (Tex.Cr. App.1975); *Seiffert v. State,* 501 S.W.2d 124 (Tex.Cr.App.1973); *Butler v. State,* 429 S.W.2d 497 (Tex.Cr.App.1968). See also *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The two elements of lack of consent and physically unable to resist, like elements of any other crime, may be proved by the prosecution by circumstantial evidence, and indeed the trial court charged the jury in this cause that

this was a circumstantial evidence case. When reviewing the sufficiency of the evidence in a circumstantial evidence case, this Court has held many times, see Volume 4, *Texas Criminal Practice Guide,* Sec. 90.06[2][c], that the evidence will be deemed insufficient to sustain proof of an alleged element or elements in the charging instrument unless the circumstances adduced exclude every other reasonable hypothesis except that of the guilt of the accused. Where a conviction rests upon circumstantial evidence, this Court also reviews the circumstantial evidence in light of the presumption that the accused is innocent. Furthermore, in a circumstantial evidence case we will not presume any acts against the accused. Lastly, a conviction resting on circumstantial evidence will not be sustained on appeal, regardless of how horrible, ghastly, shocking, or revolting the facts may be, if the evidence does not sufficiently establish, either by direct or circumstantial evidence, all the material elements of the offense charged. *Sewell v. State,* 578 S.W.2d 131, 135 (Tex.Cr.App. 1979). Every conviction based upon circumstantial evidence must necessarily be tested by its own facts to determine on appeal whether the evidence is sufficient to sustain the verdict of guilt. *Swink v. State,* 617 S.W.2d 203 (Tex.Cr.App.1981); *Sinor v. State,* 612 S.W.2d 591 (Tex.Cr.App.1981); *Earnhart v. State,* 575 S.W.2d 551 (Tex.Cr. App.1979).

After carefully reviewing the circumstantial evidence presented in this cause, we are unable to state, to a moral and reasonable certainty, that the appellant unlawfully had sexual intercourse with Linda, and have further concluded that the State has failed to exclude, to a moral certainty, every other reasonable hypothesis except the appellant's guilt.

It appears from the evidence adduced that in order to engage in sexual intercourse with Linda, all one had to do was ask her to engage in sexual intercourse, she would then consent, and she would thereafter engage in sexual in-

tercourse with the person asking. On occasion she would also willingly and voluntarily engage in deviate sexual intercourse with others. On the day prior to the day her body was found, Linda had been asked by another person, who was then with appellant, "Can we fuck you?," with Linda responding in the affirmative that they could. Thereafter, the appellant had sexual intercourse with Linda, after which the other male also had sexual intercourse with Linda. The next day the body of Linda was found in the vicinity, if not the exact location, where she had had sexual intercourse with appellant and the other person. By the testimony of the pathologist, who testified for the State in this cause, there was no indication on the body of Linda that the sexual intercourse she had had with appellant and the other person had been forcibly caused. Although the pathologist did not testify to a cause of death, we are able to discern from his testimony that Linda probably died while in a diabetic coma. Also, from the evidence adduced, we have concluded that at times both before and after the time when appellant had sexual intercourse with Linda, Linda was lethargic, and may not have been at all times physically able to resist or consent to having sexual intercourse. However, the evidence does not exclude to a moral certainty that at the actual time appellant had sexual intercourse with Linda she was then unable to consent or was physically unable to resist having sexual intercourse with the appellant.

Furthermore, when circumstantial evidence is weak, and the record affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, this Court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. *Schershel v. State,* 575 S.W.2d 548 (Tex.Cr.App.1979). In this cause, another person was present during most of

the time Linda was at the location where she had sexual intercourse with the appellant. However, this person was not called to testify by the State, nor did the State account for his absence.

Because of the absence in the record of conviction of answers to such questions as the following, our task in reviewing the conviction of the appellant has not been an easy one, especially in light of the shocking facts presented as to the conduct of appellant and others in this cause in leaving Linda in a city park, while nude and apparently torpid from the acute sugar diabetes from which she suffered. Some of the questions which should have been asked the pathologist, but were not asked by the prosecuting attorney, are the following: What caused the death of Linda; approximately how long a person suffering from acute sugar diabetes would feel ill before lapsing into a coma; whether such a person could fall asleep, thereafter awaken, and immediately be coherent to others; and whether a sufferer of acute sugar diabetes would sweat profusely before lapsing into a coma. Linda displayed all of these signs prior to and after she had sexual intercourse with the appellant and the other person. In light of what the State had alleged, and what it knew it had to prove in order for this Court to sustain the conviction of appellant on appeal, we are at a loss to understand why the prosecuting attorney did not conduct a more probing examination of the pathologist than he did. Because of the absence from the record of evidence concerning the above topics, we are unable to say to a moral certainty that at the time the appellant had sexual intercourse with Linda that she was not alert, coherent, and totally aware of what was then happening, that she consented to having sexual intercourse with the appellant, and was physically able to resist had she chosen to resist.

The judgment of conviction is therefore ordered reversed. It is now well settled that where this Court finds that the evidence to be insufficient to sustain a conviction, the constitutional guarantee against double jeopardy precludes further prosecution of this cause. *Burks v. U.S.,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

W.C. DAVIS, J., dissents.

Before the Court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

This is an appeal from a conviction for rape. Punishment was assessed at three years. On original submission a divided panel held the evidence was insufficient to support the conviction.

Appellant was prosecuted under V.T.C.A., Penal Code Sec. 21.02(a) and (b)(3), the indictment alleging that appellant did:

"intentionally and knowingly have sexual intercourse with L———A———, a female not his wife, the said L———A——— not having consented thereto and the said [appellant] knowing that the said L———A——— was physically unable to resist."

In finding the evidence insufficient, the panel opinion stated:

"... the evidence does not exclude to a moral certainty that at the actual time appellant had sexual intercourse with Linda she was unable to consent or was physically unable to resist having sexual intercourse with the appellant."

On rehearing the State points out that the panel did not consider appellant's confession when it discussed the sufficiency of the evidence. The confession introduced at trial recites:

"On the night of Sunday, July 3rd, 1977 about 10:00 or 10:15 P.M., I left my house in my car and drove around some in Haskell. I went to the old South Side grocery store where I saw Frank Enriquez and L———C———, and two other boys which I know but do not know their names at the South Side Grocery. I stopped and one of the boys, the taller of

the two, and L———C——— got into my car, we had to help L——— get into the back seat, and we told the other boys to meet us in the park, I then drove down by the old depot and into the park where we stopped on the hill above the rest rooms. We all got out, and had to help L——— get out and she layed down on the ground and me and the other boy undressed her. She had on a white blouse with black stripes and a pair of pants, and some kind of shoes. She did have on panties and a bra which we also removed. She was kind of moving some but she was awful drunk or something. I had sexual intercourse with L——— and then the other boy did. After we had got through she was passed out and I took some beer that I had and poured it on her head to try and wake her up but we could not. She was breathing kind of like she was snoring. Me and the other boy got into my car and pulled down into the park by the rest rooms where we saw Frank Enriquez and the other boy's brother by the rest rooms. We all four walked back up the hill and looked at L——— and one of the brothers felt of her heart and said it was still beating and I could hear her breathing, sorta like she was snoring again. None of us knew what to do so we just decided to leave her there because we thought she was just drunk and would wake up in a couple of hours. We all walked back down to where my car was parked and I got in it and drove to the Colonial Food Store and got some cigarettes and then went home. I got home right at 11:00 P.M. During the time we were with L——— we had to help her in and out of the car and she was either real drunk or something, because I don't think she knew what was happening, she was real sick or something. Frankie Enriquez told me that he thought something was wrong with her because she had got worse the longer he was around her during the day. On July 4th, 1977 me and a bunch of my kinfolks went to the park North of Knox City, Texas about 5:00 P.M. and come back about 9:00 P.M., when we got back to Mother-in-laws she told us that L———C——— had been found dead in the park. We heard that she had been cut up or stabbed but she was not hurt anyway when we left her in the park. She was just drunk or doped or sick, I don't know which. But none of us four hurt her anyway. We just left her where she was laying because we thought she would get all right in a couple of hours."

Other evidence established that L.A., alleged in the indictment, was the same person also known as L.C., referred to in the confession and by some witnesses at trial.

■ We find the confession is sufficient to prove the deficiencies found by the panel, and hold the evidence supports the conviction. The judgment ordering an acquittal for insufficient evidence is set aside.

■ We have found fundamental error in the jury charge that requires reversal. There is no paragraph in the charge applying the law to the facts. This requires reversal. *Williams v. State,* Tex.Cr.App., 547 S.W.2d 18; *Harris v. State,* Tex.Cr. App., 522 S.W.2d 199.

The State's motion for rehearing is granted in part and denied in part; the judgment is reversed and the cause remanded.

McCORMICK, J., concurs.

CLINTON, Judge, concurring.

At this point in our treatment of the problem of sufficiency of evidence under V.T.C.A. Penal Code, § 21.02(a) and (b)(3) there is still some confusion that needs to be addressed, particularly since this cause presents a matter of first impression.

The statute provides that sexual intercourse is without consent when, in the order prescribed by it and alleged in the indictment:

(1) the female *has not consented;* and

(2) the accused knows

(3) the female is physically unable to resist.

The panel opinion found evidence insufficient, partly because it does not exclude

that at the precise moment of intercourse that the female "was *unable to consent*." (Emphasis added) With all deference, inability or incapacity to consent is not an element of the offense pleaded in this cause. The question is whether evidence is sufficient to show that she "has not consented:" that is, she has not "assent[ed] in fact, whether express or apparent," *id.*, § 1.07(a)(9).

Then the opinion of the Court En Banc points to and sets out appellant's confession, and concludes that it is "sufficient to prove the deficiencies found by the panel." Applied precisely, that means that within the confession is ample evidence that the female "was unable to consent," for that is one of the deficiencies found by the panel. Strictly speaking, it does not mean that evidence is sufficient to affirmatively show she did not "assent in fact" to intercourse, although certain recitations in the confession seem to adequately raise that inference.

I therefore concur in both the reasoning and judgment of the majority opinion, and write only to point out a conceptual uniqueness which distinguishes the provision in issue[1] from other rape proscriptions contained in § 21.02(b).

TEAGUE, Judge, dissenting.

Because I am still convinced that the evidence presented by the State was insufficient as a matter of law to sustain the verdict of the jury finding the appellant guilty of rape, I must therefore respectfully dissent to the majority's holding that the evidence was sufficient to sustain the verdict of the jury.

Appellant was charged with violating. V.T.C.A., Penal Code, Sec. 21.02(b)(3), which provides that the offense of rape occurs if the female has not consented *and* the defendant knows that she is unconscious or physically unable to resist. By virtue of the express wording of the statute, in order to legally convict a person of violating the

stated provisions of the rape statute, the State must prove *both* of these elements of the offense. When I authored the majority panel opinion, and reached the result that the evidence was insufficient to sustain the verdict of the jury, I considered the fact that the appellant had given a confession. However, I did not find it added anything to what I discerned the facts of the case to be. And I still don't. The majority has now concluded that the evidence is sufficient to establish that both of the above elements were proved by the State. Nowhere, however, does the majority opinion explain or inform us how such a conclusion was reached.

Even viewing the facts in a light most favorable to the verdict of the jury, as this Court is required to do, I am still unable to conclude from all of the facts the State presented that the evidence is sufficient to show that the appellant knew at the time of the sexual intercourse that the female was physically unable to resist.

Be that as it may, I am unable to understand how anyone can reasonably conclude that the appellant's confession, standing alone, is sufficient to establish that the female did not consent to sexual intercourse with the appellant. Again, not only must the State prove that the female was physically unable to resist, but additionally must prove that when the act of sexual intercourse occurred, she did not consent to the act of sexual intercourse. This is the way the Legislature wrote the statute and it is our duty to give the statute a reasonable interpretation.

The majority implicitly holds that the confession, standing alone, furnishes necessary evidence to prove both of the required statutory elements. I totally disagree with this conclusion. The confession nowhere specifically and expressly states that the female never consented to the act of sexual intercourse with the appellant, nor does the confession ever state that she refused to

---

**1.** The requirement of affirmative proof that the female did not "assent in fact" also characteriz-

es subsection (b)(5).

have sexual intercourse with the appellant. I do not believe that the mere failure of the appellant to affirmatively state in the confession that the female *did* consent is sufficient to prove beyond a reasonable doubt that she *did not* consent, since there is no indication in the confession that the appellant at the time he made the statement was in fact queried as to whether she did in fact consent. It was the State's burden and not the appellant's burden to prove that the female did not consent to having sexual intercourse with appellant prior to their having sexual intercourse. In fact, one of the State's very own witnesses testified that the female did consent to the act of sexual intercourse shortly after she entered the appellant's automobile. This fact was never contradicted by the State, either by the appellant's confession or by any medical testimony that she would not have been able to consent—if in fact she had previously lapsed into unconsciousness due to her diabetic condition. And that was my point when I may have overly chastised the prosecuting attorney in stating that a more probing examination of the pathologist should have occurred.

Furthermore, this is a conviction based upon circumstantial evidence. There is absolutely nothing in the record of appeal to rebut the reasonable hypothesis that the female voluntarily entered appellant's vehicle, although appearing intoxicated to appellant, but thereafter consented to having sexual intercourse with the appellant, especially in light of other unrebutted testimony that the female had engaged in sexual intercourse with the appellant on at least one other occasion.

The conduct of the appellant and others in this cause, in leaving the female in a city park, while nude and torpid, continues to fill me with revulsion, and such conduct will always be repugnant to my sensibilities. But that is not the issue before this Court. Our man-made, legislatively enacted law, does not proscribe a male having sexual intercourse with a female who has become unconscious—if that female has consented to having sexual intercourse before becoming unconscious.

In light of the State's demonstrated failure to prove beyond a reasonable doubt the lack of consent by the female, I must respectfully dissent to the majority's unexplained conclusion that the evidence is sufficient to prove such a lack of consent.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

CAMPBELL, Judge.

This is an appeal from a conviction for rape. Punishment is three years imprisonment. On original submission a divided panel held that the evidence presented at trial was insufficient to support conviction. On the State's motion for rehearing the court en banc reversed and remanded the cause holding fundamental error existed in the jury charge. On State's motion for rehearing the court expressly held sufficient evidence existed to support the conviction. Due to our disposition of this cause on the State's motion for rehearing, we now find it necessary to address a ground of error which was previously unanswered due to the panel's resolution of the case.

In his motion for rehearing appellant asserts that the trial court erred by admitting into evidence appellant's confession because it was procured involuntarily. Additionally, appellant contends that this court erred in holding that sufficient evidence was presented to establish that the sexual intercourse took place without the victim's consent and that the victim was unable to resist.

On July 3, 1977, the victim, L_____ C_____, while in the Haskell city park became sick or ill, in the presence of Frank Enriquez, Crispin Martinez, and Robert Martinez. L_____ C_____ left the park on foot, staggering until she fell down in a nearby vacant lot. After collapsing in the vacant lot the victim was loaded into the appellant's automobile by the appellant and Crispin Martinez. Appellant drove the victim to a secluded location near the city swimming pool. There the appellant and Crispin Martinez had sexual intercourse with L_____ C_____.

On July 4, 1977, the naked body of L————C———— was found at the same location appellant and Crispin Martinez had had intercourse with L————C————. Testimony at trial established that she had died sometime after having intercourse with the appellant. The probable cause of death was diabetes mellitus.

On July 5, 1977, appellant was questioned by the Haskell police and district attorney. After giving a statement admitting his involvement in the abduction and rape of L————C———— appellant was arrested.

The appellant contends the trial court erred by admitting into evidence his confession. Specifically, appellant maintains that the confession was rendered involuntary because it was induced by the district attorney's promise that he "could probably go home" after giving a statement.

■ It is an established rule of law that a confession based upon an inducement by a *promise*[1] made or sanctioned by a person in authority is inadmissible. *Pitts v. State,* 614 S.W.2d 142 (Tex.Cr.App.1981), *McMahon v. State,* 582 S.W.2d 786 (Tex.Cr.App. 1978) (rehearing denied 1979). Generally, determination of whether a confession was voluntarily made or not depends upon examination of the totality of the circumstances. *Berry v. State,* 582 S.W.2d 463 (Tex.Cr.App.1979); *Farr v. State,* 519 S.W.2d 876 (Tex.Cr.App.1975).

During the investigation of the victim's death the appellant had been implicated in the assault. Prior to arrest appellant was requested to voluntarily come to the courthouse for questioning, which he did. He was twice advised of his rights before any questions were asked. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district attorney testified that appellant was very concerned that he was suspected of *killing* L————C————. At the time of questioning, the district attorney had just returned from witnessing the autopsy of L————C————. Although a cause of death had not been established, a

violent death had been ruled out. With this information in hand, the district attorney said to appellant, "From what evidence I know now, go ahead and give the statement. Let's get this thing all straightened up and you can *probably* go home."

■ Because of the inclusion of the term "probably" in the district attorney's comment it is doubtful whether the remark represented a "promise." Assuming arguendo that the remark did constitute a promise, the record fails to show that the remark was relied upon by the appellant in giving his statement.

Appellant's incentive for confessing appears to be a desire to avoid implication in the murder of the victim. The record clearly indicates by appellant's own testimony that this motivation was paramount if not exclusive:

"Q. [PROSECUTOR]: Did you become fearful?

"A. [APPELLANT]: Yes, sir. When I went in there, the thing that was concerned me more was that people were saying that she had been murdered.

　　*　*　*　*　*　*

"Q. [DEFENSE COUNSEL]: Was that a further inducement to you to sign the written statement?

"A. [APPELLANT]: Yes, sir, because I told Mr. Beauchamp that I wanted this thing settled pretty quick because I was thinking about my wife. I knew I had been out with a girl, but I knew that I hadn't done anything bad to her or anything. That's why I wanted— you know, about that it would be settled without her knowing anything about it, I went ahead."

Furthermore, the appellant's motivation for making a confession may be ascertained directly from the statement itself:

"... We heard that she had been cut up or stabbed but she was not hurt in any way when we left her in the park ... But none of us four hurt her anyway."

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

Clearly, examining the totality of the circumstances, the prosecutor's remark was not the primary incentive behind appellant's confession. We hold the confession was voluntary and therefore admissible.

Appellant was indicted under V.T.C.A. Penal Code, Sec. 21.02(a) and (b)(3). In pertinent part, the indictment alleged that the appellant did:

"intentionally and knowingly have sexual intercourse with L_____A_____, a female not his wife, the said L_____A_____ not having consented thereto and the said [appellant] knowing that the said L_____A_____ was physically unable to resist."

The statutory provisions of Sec. 21.02 which was relied upon in the indictment prescribe:

"Sec. 21.02. Rape.

"(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

"(b) The intercourse is without the female's consent under . . . the following circumstances:

" * * *

"(3) She *has not consented and the accused knows she is unconscious or physically unable to resist.*"

On rehearing, this Court, in an opinion by Judge Odom, held that the confession of the appellant "is sufficient to prove the deficiencies found by the panel, and hold the evidence supports the conviction." The confession which was introduced at trial provides:

"On the night of Sunday, July 3rd, 1977 about 10:00 or 10:15 P.M., I left my house in my car and drove around some in Haskell. I went to the old South Side grocery store where I saw Frank Enrique and L_____C_____, and two other boys which I know but do not know their names at the South Side Grocery. I stopped and one of the boys, the taller of the two, and L_____C_____ got into my car, we had to help L_____ get into the back seat, and we told the other boys to meet us in the park, I then drove down by the old depot and into the park where we stopped on the hill above the rest rooms. We all got out, and had to help L_____ get out and she layed down on the ground and me and the other boy undressed her. She had on a white blouse with black stripes and a pair of pants, and some kind of shoes. She did have on panties and a bra which we also removed. She was kind of moving some but she was awful drunk or something. I had sexual intercourse with L_____ and then the other boy did. After we had got through she was passed out and I took some beer that I had and poured it on her head to try to wake her up but we could not. She was breathing kind of like she was snoring. Me and the other boy got into my car and pulled down into the park by the rest rooms where we saw Frank Enriquez and the other boy's brother by the rest rooms. We all four walked back up the hill and looked at L_____ and one of the brothers felt of her heart and said it was still beating and I could hear her breathing, sorta like she was snoring again. None of us knew what to do so we just decided to leave her there because we thought she was just drunk and would wake up in a couple of hours. We all walked back down to where my car was parked and I got in it and drove to the Colonial Food Store and got some cigarettes and then went home. I got home right at 11:00 P.M. During the time we were with L_____ we had to help her in and out of the car and she was either real drunk or something, because I don't think she knew what was happening, she was real sick or something. Frankie Enriquez told me that he thought something was wrong with her because she had got worse the longer he was around her during the day. On July 4th, 1977 me and a bunch of my kinfolks went to the park North of Knox City, Texas about 5:00 P.M. and come back about 9:00 P.M., when we got back to Mother-in-laws she told us that L_____C_____ had been found dead in the park. We heard that she had been

cut up or stabbed but she was not hurt anyway when we left her in the park. She was just drunk or doped or sick, I don't know which. But none of us four hurt her anyway. We just left her where she was laying because we thought she would get all right in a couple of hours."

From a thorough review of both the appellant's confession as well as the trial court record it was reasonable for the jury to infer appellant was aware of the victim's incoherency as prescribed in Sec. 21.02, supra. Clearly, the appellant realized that the female "was unable to resist." This element can be directly inferred from the appellant's admission in the confession that:

"During the time we were with L_____ we had to help her in and out of the car and she was either real drunk or something, because *I don't think she knew what was happening,* she was real sick or something."

Our inquiry is therefore now directed to the sole issue of determining whether or not sufficient evidence was presented to establish the victim "has not consented" per Sec. 21.02(b)(3), supra. The Penal Code provides the following general definition for "consent":

" 'Consent' means assent in fact, whether express or apparent." Sec. 1.07(9), V.T. C.A. Penal Code.

In the instant situation testimony introduced at trial established that the victim was suffering from acute diabetes mellitus. Prior to, during, and after having sexual intercourse L_____C_____ was lapsing into a diabetic coma. Her condition was analogized to intoxication by Dr. Williams, the pathologist who performed the autopsy:

"Q. [DEFENSE COUNSEL]: ... At certain stages of intoxication [a person suffering from diabetes mellitus] develops lethargy and the same symptoms, does it not?

"A. Oh yes. I think in that respect, the symptoms could easily be confused.

\* \* \* \* \* \*

"Q. Now, a person suffering from an undiagnosed case of diabetes mellitus could appear to be sleepy, could they not?

"A. Yes.

"Q. Drowsy, or might have some difficulty walking?

"A. These are all—these can all be, I think, housed in the word lethargic.

\* \* \* \* \* \*

"Q. Now, this—once you advance to the lethargic stage, of the diabetes mellitus, *the nervous system is affected, is it not?*

"A. Yes, because the body then goes into what's called a coma—state of coma, which is a more advanced form of lethargy where breathing may become very slow and eventually may cease. The body develops what is called in medical terms an acidosis, and then this acetone breath becomes quite profound.

"Q. But it's principally the, effecting the nervous or mental system, is it not?

"A. The vital centers, yes."

Additionally, the victim's lack of consent is demonstrated by the testimony of eyewitness Frank Enriquez. Witness Enriquez testified regarding the victim's apparent physical condition as well as her abduction and rape. The witness stated that he met the victim in the park on July 3 at approximately 5:00 p.m. and engaged her in conversation. When he first approached her she appeared physically normal. However, as their conversation progressed the victim began "staggering all over the place."

Enriquez testified that the victim became so unsteady that Robert Martinez had to help her walk.

"Q. [PROSECUTOR]: How was he helping her?

"A. [WITNESS]: He put his hand around her—grabbed her so she wouldn't fall.

"Q. All right did L_____ ever mention that she was sick?

"A. Yes, sir, when she got out of the monkey cage—

\* \* \* \* \* \*

"Q. Did L_____ ever indicate to you that she was sick?

"A. Yes, sir, she did.

"Q. Did she ever ask you to take her home or help her in any way?

"A. She told us to take her home."

Enriquez continues to testify regarding the deteriorating physical condition of the victim prior to the appellant's arrival on the scene.

"Q. [PROSECUTOR]: What did you do when you got to the South Side Grocery?

"A. [WITNESS]: We stayed there a little while and then Crispin went up there where they was, and L___ she was sweating real bad, you know. She barely had her eyes open.

"Q. What do you mean sweating real bad?

"A. She had a lot of sweat on her face.

"Q. Did she ever say anything?

"A. No sir.

"Q. How was she located—standing up or laying down?

"A. Laying down.

"Q. On her stomach or on her back or—

"A. On her back.

"Q. In other words, Frank, *how would you describe her condition*—was she awake or passed out or—

"A. *Passed out.*"

Witness Enriquez continues by describing the events that occurred upon appellant's arrival at the location where the victim had collapsed.

"Q. Then what did he do?

"A. *He and Crispin—he picked L___ up and they put her in the car.*

"Q. You said 'they put her in the car'— what do you mean?

"A. *They grabbed her and they put her in the car.*

"Q. Grabbed her and put her in the car?

   \*    \*    \*    \*    \*    \*

"Q. L___ *didn't walk to the car?*

"A. *She didn't walk.*

"Q. Are you sure?

"A. I'm sure."

Enriquez then described the victim's condition after the appellant had intercourse with her:

"Q: Did L___ have any clothes on?

"A. No, sir.

"Q. Was L___ awake?

"A. No, sir.

   \*    \*    \*    \*    \*    \*

"Q. Did she ever raise up?

"A. No.

"Q. Did she ever move?

"A. No, she was just breathing.

"Q. Just breathing.

"A. Breathing hard.

"Q. Was she having a hard time breathing?

"A. Yes, sir.

"Q. Did you try to help L___ in any way, Frank?

   \*    \*    \*    \*    \*    \*

"Q. Did you ask anybody else to help her?

"A. I asked Alberto and them to put her clothes on and Alberto he just picked them clothes up and dropped them on her like that.

"Q. What did Alberto say then?

"A. He said 'let's go', so we left.

"Q. And where did you go to?

"A. We went down where his car was, and he got in his car and left and went on to Elsie's."

From the record it was reasonable for the jury to conclude that the victim was so impaired both mentally and physically that she could not effectively resist the advances of appellant. Under the circumstances presented in the instant situation the requisite of lack of consent was demonstrated by impossibility. The severity of the victim's impairment was graphically demonstrated by the fact that she died at the scene of the attack shortly after having intercourse with the appellant.

In the instant situation the State demonstrated beyond a reasonable doubt that the victim was so severely impaired by diabetes mellitus prior to, during and after the attack that it would have been impossible for her to have voluntarily consented to any-

thing including sexual intercourse.[2] Sufficient evidence is presented in the record to convict.

Judge Odom's opinion on the State's motion for rehearing reached the proper conclusion:

"We have found fundamental error in the jury charge that requires reversal. There is no paragraph in the charge applying the law to the facts. This requires reversal. *Williams v. State* [Tex.Cr.App.], 547 S.W.2d 18; *Harris v. State* [Tex.Cr.App.], 522 S.W.2d 199."

The judgment is reversed and the cause remanded for a new trial.

TEAGUE, J., concurs in the result only.

TEAGUE, Judge, dissenting.

Appellant urges in his second motion for rehearing that this Court should reverse the conviction because the evidence is insufficient. To the Court's failure to grant appellant leave to file the second motion for rehearing, reconsider the issue, and reverse the conviction for insufficiency of the evidence, I dissent.

I now find myself totally unable to agree with the last opinion of this Court, as to its version of the facts.

Crispin Martinez, who testified for the State, specifically testified that after he and appellant got in the automobile with the victim, L_____C_____, she specifically consented to have sexual intercourse with both appellant and Martinez, and thereafter they each had sexual intercourse with her. Therefore, the State had the burden of specifically rebutting the testimony of Martinez to prove the offense of rape under V.T.C.A., Penal Code, Sec. 21.02(b)(3). It did not, however, satisfy that burden.

This Court, in its last opinion, to reject the appellant's claim that the evidence is insufficient to sustain the verdict of the jury, stated in part that it was relying upon a statement in appellant's confession, to-wit: "I don't think she knew what was happening," to establish that L_____C_____ was incapable of consenting to have sexual intercourse with appellant and Martinez at the time Martinez said she agreed to have sexual intercourse with him and appellant. However, such a statement is just as consistent with an interpretation that appellant thought she was groggy, but still able to consent to the act of sexual intercourse. Especially is this true when one considers that L_____C_____ had previously engaged in sexual intercourse while she was intoxicated. Thus, appellant's statement in his confession does not sufficiently rebut Martinez' testimony that she had consented to the act of sexual intercourse prior to having sexual intercourse with him and appellant.

This Court in its last opinion, to reject the contention that the evidence is insufficient to sustain the verdict of the jury, also pointed in its opinion to testimony by Frank Enriquez that L_____C_____ had passed out at some time prior to her entry into appellant's automobile, and that because the appellant and Martinez had to carry her to the car, this was evidence that L_____C_____ was incapable of having consented at the time that Martinez said she did. However, there is nothing in the record of appeal, which includes the testimony by a medical examiner, to indicate that a person suffering from acute diabetes mellitus, as L_____C_____ was, would be unable to regain consciousness after having passed out, and thereafter consensually engage in sexual intercourse. Thus, Enriquez' testimony does not preclude, beyond a reasonable doubt, an interpretation of the evidence that L_____C_____ passed out, but thereafter regained consciousness in the automobile and was able and capable of giving the consent appellant presumably relied upon before he had sexual intercourse with her. I further point out for emphasis that nobody, including L_____C_____, knew she was suffering from acute diabetes milletus.

---

**2.** We expressly note that the factual context of this case is unique. We reserve ruling on conceivable situations where the victim was coherent and gave effective consent and prior to the completion of the act of intercourse a physical or mental impairment arose.

For the above reasons, I do not believe that the State has proved beyond a reasonable doubt, as required by State and Federal Constitutional law, that L_____ C_____ did not consent before she became terminally unconscious. The State has not established beyond a reasonable doubt that the offense of rape was committed. Nor do I believe a rational and reasonable trier of fact would find the appellant guilty upon the evidence the State has presented.

Appellant's motion should be granted and the cause reversed for insufficiency of the evidence, as well for the other reasons this Court has previously given in its former opinions related to this cause.