# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
## NO. 02-10-00043-CR


JOHN WILLIAM MCNATT                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

A jury convicted Appellant John William McNatt of recklessly causing serious bodily injury to a child and assessed his punishment at twenty years' imprisonment. *See* Tex. Penal Code Ann. § 22.04(a)(1), (e) (West 2011). Appellant contends in five points that the trial court erred by admitting evidence of extraneous offenses, by refusing to suppress his videotaped interview, and by

---

[1]*See* Tex. R. App. P. 47.4.

denying his motions for mistrial because of improper opinion testimony by the investigating detective and because of alleged improper punishment-phase arguments by the State. We affirm.

## II. Background[2]

The State alleged that Appellant, on November 16, 2008, caused serious bodily injury to his four-month-old son by shaking him. The State presented evidence that Appellant was alone with the child that morning after Mary, Appellant's then-girlfriend and the child's mother, left for work; that the child's injury required a great amount of force; and that as a result of the injury, the child has a shunt in his head and suffers from seizures. The jury also watched the January 2009 videotaped interview in which Appellant made incriminating statements to Detective Richard Chapman, the investigating officer. Appellant testified at trial that he made the incriminating statements only to protect Mary from potential prosecution. Appellant also presented testimony by Bexar County Deputy Chief Medical Examiner Dr. Kimberly Molina, who testified about her opinion that the child's injuries could not have been caused by only shaking the child.

## III. Extraneous Offense Evidence

Appellant contends in his first point that the trial court abused its discretion by overruling his objections to "numerous extraneous offenses" introduced during

---

[2]Because Appellant does not challenge the sufficiency of the evidence, we only briefly set forth the evidence presented at trial.

the guilt-innocence phase of trial. It is not clear from his brief, but Appellant seems to complain about the admission of five alleged extraneous acts or offenses: (1) a November 2007 incident in which Appellant cut his wrists after Mary tried to break up with him; (2) a December 5, 2008 incident at Mary's apartment in which Appellant cut his wrists, broke Mary's cell phone, and held a knife to Mary; (3) the stormy nature of Appellant and Mary's relationship; (4) a December 5, 2008 incident in which Appellant told Mary that he would hurt their child if Mary did not allow him to come to her home; and (5) a 2003 incident in which Appellant allegedly pulled a knife on his high school girlfriend. The State responds that Appellant failed to preserve most of his complaints for appellate review and that the other evidence was admissible under code of criminal procedure article 38.37.

## A. Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been

3

preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

If a trial court hears objections to proffered evidence outside the jury's presence and rules that the evidence is admissible, the objections are deemed to apply to the evidence when it is admitted before the jury without the necessity of repeating the objections. Tex. R. Evid. 103(a)(1); *Geuder v. State*, 115 S.W.3d 11, 13–14 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991). If the party did not preserve error through an objection outside the jury's presence, the party must continue to object each time the objectionable evidence is offered or make a running objection and get a ruling. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington*, 819 S.W.2d at 859); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). Moreover, a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). This rule applies whether the other evidence was introduced by the defendant or the State. *Id*.

We hold that Appellant failed to preserve error concerning the November 2007 incident. At a hearing outside the jury's presence, the trial court sustained Appellant's objection to evidence of the November 2007 incident. Nevertheless, the State later questioned Appellant about the November 2007 incident, and Appellant did not object. Because the trial court had sustained his initial

4

objection to the November 2007 incident instead of overruling it, Appellant was required to object again when the State questioned him about it in front of the jury. *Cf.* Tex. R. Evid. 103(a)(1) (providing that objection outside jury's presence preserves error if the trial court "rules that such evidence be admitted"). Because Appellant did not object when questioned in front of the jury about the November 2007 incident, he failed to preserve his complaint for appellate review. We overrule this portion of Appellant's first point.

Appellant also failed to preserve his complaint about the December 5, 2008 incident at Mary's apartment. Appellant objected at a hearing outside the jury's presence to any evidence of this incident, and the trial court overruled the objection. However, Appellant himself admitted evidence of this incident by playing the portion of his videotaped interview in which he and Detective Chapman discussed the incident; the State had elected not to play that portion of the videotaped interview for the jury. *See Leday,* 983 S.W.2d at 718. We therefore overrule this portion of Appellant's first point.

We also hold that the portion of Appellant's first point complaining of the evidence of his and Mary's stormy relationship is inadequately briefed. Although Appellant cites to the portion of the record containing his objection outside the jury's presence to evidence of his and Mary's relationship, he does not cite to any portion of the record where any such evidence was actually admitted, and we find none other than the November 2007 and December 5, 2008 incidents (discussed above) for which Appellant failed to preserve error. *See* Tex. R. App.

5

P. 38.1(i) (requiring briefs to contain appropriate citations to the record); *Akin v. State*, No. 02-08-00062-CR, 2009 WL 806902, at *1–2 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op., not designated for publication) (overruling appellate points for failure to include citations to authority and to the appellate record). We overrule this portion of Appellant's first point.

As to the two other extraneous offenses or acts, Appellant preserved his complaints for appellate review because he obtained an adverse ruling outside the presence of the jury in one instance and objected when the matter was raised in front of the jury in the other instance. *See* Tex. R. Evid. 103(a)(1); *Geuder*, 115 S.W.3d at 13–14; *Martinez*, 98 S.W.3d at 193; *Ethington*, 819 S.W.2d at 859. Thus, we will consider the merits of the remainder of Appellant's first point.

## B. Applicable Law

We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g); *see Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997). "We give great discretion to the trial court in matters of admissibility of evidence if correct under any theory of law, even if the trial court's underlying reason was wrong." *Wenger*

*v. State*, 292 S.W.3d 191, 202–03 (Tex. App.—Fort Worth 2009, no pet.) (citing

*Romero v. State*, 800 S.W.2d 539, 543–45 (Tex. Crim. App. 1990)).

It is improper to try a defendant for being a criminal generally.  *Alba v.

State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (citing *Nobles v. State*, 843

S.W.2d 503, 514 (Tex. Crim. App. 1992), *cert. denied*, 516 U.S. 1077 (1996)).  In

that regard, rule of evidence 404(b) states, "Evidence of other crimes, wrongs or

acts is not admissible to prove the character of a person in order to show action

in conformity therewith."  Tex. R. Evid. 404(b).  However, for cases like this one

in which assaultive and other offenses against a child younger than seventeen

years old are alleged, code of criminal procedure article 38.37 provides as

follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> > (1) the state of mind of the defendant and the child; and
> >
> > (2) the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann. art. 38.37, §§ 1(2), 2 (West Supp. 2010).

## C.  Discussion

During a hearing outside the jury's presence, Appellant unsuccessfully

objected to evidence that he told Mary by telephone on December 5, 2008

(approximately three weeks after their child was injured) that he would hurt their

child if Mary did not allow him to come to her apartment, and Mary testified to

those facts in front of the jury shortly thereafter. The State argues that Mary's testimony was admissible under article 38.37 of the code of criminal procedure.

In *Lincicome v. State*, the court held that evidence of a prior extraneous offense against the infant victim was admissible in Lincicome's trial for causing serious bodily injury to that infant. *See* 3 S.W.3d 644, 645, 649 (Tex. App.— Amarillo, no pet.). The State solicited evidence that Lincicome attempted to smother the infant victim with a pillow, and it offered evidence that Lincicome had previously burned the infant victim with hot water to teach the infant a lesson. *See id.* at 646, 649. The appellate court held that the extraneous act evidence was admissible under article 38.37 because "it can quite easily be said that the evidence served the purpose of illustrating both appellant's mind-set towards and interaction with the child; in other words, the evidence bore on the relationship between appellant and the victim." *Id.* at 649. In this case, the State alleged and offered evidence that Appellant had violently shaken his child in November 2008, causing serious bodily injury. The evidence that Appellant threatened to harm his child only three weeks later was admissible under article 38.37 to prove both Appellant's mindset (that is, state of mind) toward his child and his relationship with his child. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2; *Lincicome*, 3 S.W.3d at 649. It matters not that the December 5, 2008 threat occurred after the November 16, 2008 injury to the child. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (permitting introduction of evidence of the "previous and subsequent relationship between the defendant and the child"); *Pool v. State*, 981 S.W.2d

467, 469 (Tex. App.—Waco 1998, pet. ref'd) (overruling point complaining of post-offense evidence relating to the relationship between the victim and defendant). We overrule this portion of Appellant's first point.[3]

Appellant also complains of the State's question during his cross-examination asking him whether he had pulled a knife on his high school girlfriend when she broke up with him after a three-year relationship. Appellant answered the question in the negative as his attorney objected to the question under rule 404(b). This court has held that a negative answer to a question about extraneous activity presents no evidence of an extraneous offense. *See Martin v. State*, 626 S.W.2d 928, 930 (Tex. App.—Fort Worth 1982, pet. ref'd). Thus, although Appellant objected, the trial court did not actually admit evidence of an extraneous offense since Appellant answered the question in the negative. *See id.* We overrule the remainder of Appellant's first point.

## IV. Motion to Suppress

Appellant contends in his second point that the trial court erred by refusing to suppress his videotaped interview because it was not voluntarily given. Specifically, Appellant argues that Detective Chapman coerced or induced him

---

[3]To the extent that Appellant argues on appeal that evidence of the December 5, 2008 threat against the child should have been excluded under rule of evidence 403, Appellant failed to preserve that complaint for appellate review by failing to object on that ground at trial. *See Martines v. State*, No. 01-10-00172-CR, 2011 WL 2502839, at *14–15 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.) (holding Martines failed to preserve rule 403 challenge to evidence admissible under article 38.37 by failing to object on rule 403 grounds at trial).

into making incriminating statements, and Appellant references without separately briefing the Fifth and Fourteenth Amendments to the United States Constitution; Article 1, Section 19 of the Texas constitution; and articles 38.21 and 38.22 of the Texas Code of Criminal Procedure.[4]

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

---

[4]As mentioned above, Appellant himself played the first portion of the videotaped interview for the jury. Thus, we confine our analysis of Appellant's second point to the second portion of the videotaped interview.

When there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

## B. Applicable Law

An accused's statement is admissible evidence if the accused made it freely and voluntarily and without compulsion or persuasion. *See* Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). When deciding whether a statement was voluntary, we consider the totality of the circumstances in which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); *Reed v. State*, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd). A confession is involuntary if circumstances show that the defendant's will was "overborne" by police coercion. *Creager*, 952 S.W.2d at 856; *see Davis v. State*, 313 S.W.3d 317, 337 (Tex. Crim. App. 2010) ("A statement is obtained in violation of constitutional due process only if the statement is causally related to coercive government misconduct."). The defendant's will may be "overborne" if the record shows that there was "official,

coercive conduct of such a nature" that a statement from the defendant was "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *Frank v. State*, 183 S.W.3d 63, 75 (Tex. App.—Fort Worth 2005, pet. ref'd); *see Davis*, 313 S.W.3d at 337 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S. Ct. 2041, 2047 (1973)).

If a promise made by a person in authority induced a confession, then that confession is inadmissible. *Penry v. State*, 903 S.W.2d 715, 748 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995); *Alvarez v. State*, 649 S.W.2d 613, 620 (Tex. Crim. App. 1982), *cert. denied*, 464 U.S. 849 (1983). But before a promise will render a confession inadmissible, the promise must be shown to have induced the confession because it was positive for the defendant, made or sanctioned by someone in authority, and of such an influential nature that the appellant might speak untruthfully in response. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App.), *cert. denied*, 510 U.S. 837 (1993). In our review, we look to whether the circumstances of the promise would reasonably induce a defendant to admit to a crime he did not commit. *See Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991), *abrogated on other grounds by Graham v. State*, 994 S.W.2d 651 (Tex. Crim. App. 1999).

## C. Discussion

The trial court conducted an evidentiary hearing outside the presence of the jury concerning Appellant's objection to his videotaped interview; Detective

Chapman and Appellant testified, and the trial court watched a portion of the interview during the hearing. The trial court thereafter denied Appellant's motion to suppress.

Appellant identifies four statements by Detective Chapman that he contends rendered his statement coerced and involuntary: (1) that unless Appellant admitted intentional or accidental responsibility for the child's injuries, Detective Chapman would have to investigate Mary, and she might give birth to their second child in jail; (2) that if Appellant would give information that the incident was an accident, Appellant would not be in any trouble because accidents happen; (3) that Detective Chapman had spoken with Appellant's probation officer and that she was willing to work with Appellant; and (4) that Detective Chapman believed Appellant "lost it for just a minute" and that "if we can get you some help, there would be a point in time that you can still be with your child."

Detective Chapman denied making the first two statements, and neither statement appears on the videotaped interview because they were allegedly made during the five minutes that Appellant and Detective Chapman were in the hallway outside the interview room.[5] The trial court is the sole judge of the

---

[5]At the end of first portion of the videotaped interview, Appellant became frustrated with Detective Chapman's repeated requests that Appellant take a polygraph test, and Appellant left the interview room. Appellant and Detective Chapman then had an unrecorded conversation in the hallway for approximately five minutes.

credibility of the witnesses, and it could have, with support from the record, believed Detective Chapman and disbelieved Appellant. *See Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007) (citing *Green v. State*, 934 S.W.2d at 98). And as to the third and fourth statements by Detective Chapman—that he and Appellant's probation officer would try to help Appellant—the trial court could have, with support from the record, found that no coercion occurred and that no specific promises were made. *See Davis*, 313 S.W.3d at 337 ("Coercive government misconduct renders a confession involuntary if the defendant's 'will has been overborne and his capacity for self-determination critically impaired.'") (quoting *Schneckloth*, 412 U.S. at 225–26, 93 S. Ct. at 2047); *Garcia v. State*, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994) (holding detective's statements "that he [would] try to 'help him out' or would 'talk to the D.A.'" were not specific promises); *Redd v. State*, No. 14-08-01089-CR, 2009 WL 4810190, at *5 (Tex. App.—Houston [14th Dist.] Dec. 15, 2009, pet. ref'd) (mem. op., not designated for publication) ("General statements by an officer that he is there to help defendant and is the only one who can help defendant do not indicate the 'if-then' relationship required to establish a promise.") (citing *Chambers v. State*, 866 S.W.2d 9, 20 (Tex. Crim. App. 1993); *Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983)).

Based on its assessment of the credibility of the witnesses, the trial court could have found that no promise was made to Appellant that would have likely led him to falsely implicate himself, that Appellant's will was not overborne, and

14

that the totality of the circumstances supported the voluntary nature of his statement. Indeed, the trial court stated at the conclusion of the hearing, "From the tape, the defendant clearly knew he could walk out because he did. The defendant knew he could walk out because he did walk out."[6] We must give great deference to the trial court's findings, which are supported by the evidence presented at the hearing. *See Garza*, 213 S.W.3d at 346. We hold that the trial court did not abuse its discretion by admitting Appellant's videotaped interview into evidence, and we overrule Appellant's second point.

### V. Motions for Mistrial

Appellant argues in his third point that the trial court erred by denying his motion for mistrial after Detective Chapman gave his unsolicited opinion that Appellant was evasive and that he minimized his conduct during the videotaped interview. Appellant contends in his fourth and fifth points that the trial court erred by denying his two motions for mistrial during the State's punishment-phase closing argument.

### A. Applicable Law

When a trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the

---

[6]The trial court did not make any other express findings.

15

prejudice caused by certain testimony or improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.*; *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004); *Orr v. State*, 306 S.W.3d 380, 403–04 (Tex. App.—Fort Worth 2010, no pet.). In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of conviction or the punishment assessed absent the misconduct. *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). The trial court is in the best position to balance these factors. *Orr*, 306 S.W.3d at 404.

## B. Detective Chapman's Unsolicited Opinion

The following exchange occurred after the State played the second portion of Appellant's videotaped interview for the jury:

> [Prosecutor:] Detective Chapman, when you're doing an interview like this, of course you're trying to get information. Do you use various investigative techniques or methods to try to elicit that information in your interviews?
>
> [Detective Chapman:] Yes, ma'am.
>
> [Prosecutor:] Did you use some techniques in the interview portion the jury just saw with the defendant?
>
> [Detective Chapman:] I did.

16

[Prosecutor:]  What did you do to try to get your information out?

[Detective Chapman:]  Well, usually — and every interview is going to be different because every victim or suspect or who you're talking to is going to be different.  With him, he was being very evasive.  And I believed, especially toward the end part of the interview, was minimizing what was happening with the victim.

[Appellant's Counsel:]  Well, Your Honor, we're going to object to that for the reason that is nonresponsive to the question she asked, what kind of technique he had.

[Trial Court:]  Sustained.

[Appellant's Counsel:]  Ask the Court to instruct the jury not to consider the statement made by the witness.

[Trial Court:]  I will instruct the jury to disregard the last statement of the witness.

[Appellant's Counsel:]  Once again, because of the prejudicial nature of this, ask for a mistrial.

[Trial Court:]  I'll deny the motion for mistrial.

Appellant does not explain why the trial court's prompt instruction for the jury to disregard Detective Chapman's statement was allegedly insufficient.  We note that the jury had just watched Appellant's videotaped interview when Detective Chapman offered his unsolicited opinion and was thus able to independently determine whether Appellant was minimizing his role and being evasive.  We also note that Detective Chapman later testified without objection on cross-examination that Appellant tried to minimize his culpability.  Because Appellant does not explain how Detective Chapman's statement influenced the jury to such an extent that the instruction to disregard could not have cured any

17

prejudice and because we presume that the jury followed the trial court's instruction to disregard in the absence of evidence to the contrary, we cannot conclude that the trial court abused its discretion by overruling Appellant's motion for mistrial following Detective Chapman's statement. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Orr*, 306 S.W.3d at 405 (stating that reviewing courts presume the jury followed the trial court's instruction to disregard "[i]n the absence of evidence that it did not"). We overrule Appellant's third point.

## C. Punishment Phase Closing Arguments

Appellant contends in his fourth and fifth points that the trial court erred by denying his motions for mistrial after the State made two alleged improper arguments during the punishment phase of trial. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

Appellant first complains of the prosecutor's reference to a music video for a song by Justin Timberlake. During the guilt-innocence phase, the State cross-examined Appellant about the contents of his MySpace page as follows:

Q. [Prosecutor:] So your testimony is that you loved Mary so much that you're willing to come in and tell this detective [on January 21, 2009] that you did this, but a week before, two weeks before, your MySpace page says, What goes around comes around. And let's talk about that. That's in reference to a Justin Timberlake video where a boyfriend runs a girlfriend off the road and kills her, isn't it?

A. [Appellant:] I wasn't – I wasn't aware of that.

The trial court also admitted a January 5, 2009 copy of Appellant's MySpace page, which included the following statements: "WHAT GOES AROUND COMES BACK AROUND!!! 'F[%&!] YOU MARY!!!!!!!!!!'" The MySpace page also included a hyperlink, which appears to link to the video of the Justin Timberlake song. Appellant denied posting the comments about Mary on his MySpace page.

The following exchange occurred during the State's punishment-phase closing argument:

[Prosecutor:] What goes around comes around. Oh, yeah, that was the video where the guy kills the girl in the end. Yeah, heard about that, too.

[Appellant's Counsel:] We object, Your Honor, that's outside the record, the comment that was just made.

[Trial Court:] Sustained.

[Appellant's Counsel:] We would ask the jury be instructed not to consider that comment by the prosecutor for any reason in their deliberations.

[Trial Court:] Jury will disregard the last comment.

[Appellant's Counsel:] And because of the comment, we would ask the Judge to declare a mistrial.

[Trial Court:] You're overruled.

19

[Prosecutor:] Ladies and gentlemen, you know what the testimony has been in this trial. And I'm in no way trying to substitute my recollection of it for yours. You know what it was and you know what this man has done and what he's capable of doing.

In his fifth point, Appellant complains of the State's hypothetical argument during its rebuttal. During his punishment-phase closing argument, Appellant's counsel stated:

[W]ell, you hear all these bad things from these people that have personal relationships with [Appellant]. But the people who know him best, his family, all come in – including Mary, including her mother – and say that [Appellant] when he came to taking care of children, always shows loving care and kindness. His sister says it. She's let him keep her child. His mother, his stepfather talk about, you know, how nice he was to children, babies and all that kind of stuff.

The following exchange occurred during the State's rebuttal argument:

[Prosecutor:] And defense counsel's argument that, you know, everyone says he was a really nice guy. So he's good with kids, so it's not a big deal, let's just move on down the road. You know what? If I were in a relationship and I was great to that person for 20 years, but on the 20th anniversary I stabbed him, I don't think it matters how many birthday cards I sent him.

[Trial Court:] Two minutes.

[Prosecutor:] At some point you are responsible for your actions. At some point –

[Defense Counsel:] Object, Your Honor.

[Prosecutor:] He has to be held accountable.

[Defense Counsel:] We're going to object she's arguing out of the record that anybody got stabbed by the defendant.

[Trial Court:] Sustained.

20

[Prosecutor:]  At some point –

[Defense Counsel:]  Did you sustain my objection?

[Trial Court:]  I did.

[Defense Counsel:]  May I have an instruction, please, for the jury not to consider that argument.

[Trial Court:]  The jury will not consider it.

[Defense Counsel:]  We will ask for a mistrial.

[Trial Court:]  Overruled.

An instruction by a trial court to disregard an improper argument will usually cure the error.  *Phillips v. State*, 130 S.W.3d 343, 347 (Tex. App.—Houston [14th Dist.] 2004), *aff'd,* 193 S.W.3d 904 (Tex. Crim. App. 2006) (citing *Campos v. State*, 589 S.W.2d 424, 428 (Tex. Crim. App. 1979)).  When the trial court instructs a jury to disregard, we presume the jury follows the trial court's instructions.  *Id.* at 347–48 (citing *Waldo v. State*, 746 S.W.2d 750, 752–53 (Tex. Crim. App. 1988)).  However, if the error is extremely prejudicial and cannot be withdrawn from the jurors' minds, the trial court should declare a mistrial.  *Lusk v. State*, 82 S.W.3d 57, 60 (Tex. App.—Amarillo 2002, pet. ref'd).  Accordingly, a mistrial is appropriate only when the event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.  *Id.*

Other than stating that the State's arguments did not fall within the four generally accepted categories for closing argument, Appellant does not attempt

to explain why the trial court's instructions not to consider the State's arguments were insufficient. The entirety of Appellant's argument about the alleged inadequacy of the trial court's instructions to disregard states: "Appellant also contends that the complained of arguments were so improper that they could not be rendered ineffective by the instructions to disregard. *See Martinez v. State*, 17 S.W.3d 677, 691 (Tex. Crim. App. 2000)."[7]

Although the State argues that the first argument involved a reasonable deduction from the evidence and that the second comment was both a response to Appellant's request for leniency and a plea for law enforcement, we will assume without deciding that both comments were improper. Based on that assumption, neither comment was so inflammatory, however, as to be incurable, and the record does not reflect a flagrant disregard for the permissible bounds of argument. The comments constituted only two isolated portions of the prosecutor's closing argument, were not repeated, and were each followed by a prompt instruction to disregard. We presume that the jury followed the trial court's instructions to disregard, and we note that Appellant points to nothing in the record indicating that the jury did not follow the instructions. *See Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). And although the jury assessed Appellant's punishment at the maximum

---

[7]The court of criminal appeals held in *Martinez* that the prosecutor's reference to facts outside the record of that case were "not so extreme as to render ineffective an instruction to disregard." *Id.*

22

of twenty years, the jury heard evidence that extreme force was necessary to inflict injury of the type that the child suffered; that the child still suffers from the injury and will likely continue to suffer in the future; that Appellant had stalked his high school girlfriend; that Appellant had cut his wrists on at least three occasions because of problems in his relationships with his high school girlfriend and Mary; and that Appellant has prior convictions for theft, criminal trespass, burglary of a habitation, obtaining a controlled substance by fraud, and driving while intoxicated. Also, the present offense was committed shortly after Appellant was released from a drug treatment program. *See Olive v. State*, Nos. 05-09-00419-CR, 05-09-420-CR, 2010 WL 1665276, at *3 (Tex. App.—Dallas Apr. 27, 2010, pet. ref'd, untimely filed) (mem. op., not designated for publication).[8] Considering the evidence and the nature of the offense, we cannot conclude that the prosecutor's remarks contributed to the punishment assessed. *See Hawkins*, 135 S.W.3d at 85 (concluding lengthy sentence more likely attributable to numerous prior convictions over extended period of time and fact that some offenses were committed before punishment on others had expired); *Olive*, 2010 WL 1665276, at *3. Under the facts of this case, we conclude that the trial court

---

[8]In *Olive*, the court affirmed the trial court's denial of Olive's motion for mistrial, which was made after the State referred to information outside the record during punishment-phase closing arguments. *Id.* The court noted that although the jury assessed the maximum sentence, the jury heard evidence that Olive "was a drug addict; had prior convictions for burglary of a habitation, unauthorized use of a motor vehicle, and possession with intent to deliver cocaine; and his drug use was the cause of his problems." *Id.* at *1, *3.

did not abuse its discretion by denying Appellant's punishment-phase motions for mistrial. We overrule Appellant's fourth and fifth points.

## VI. Conclusion

Having overruled each of Appellant's five points, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 6, 2011